Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| CRUZ VIOLETA TORRES RAMÍREZ  Parte Apelante  v.  FIRST HOSPITAL PANAMERICANO, INC.  Parte Apelada | TA2026AP00019 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce  Caso Núm. PO2021CV00568  Sobre: Despido Táctico-Ley 80; Represalias-Ley 115; Discrimen por Edad-Ley 100; Daños y Perjuicios |

Panel integrado por su presidenta la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Rodríguez Flores, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 26 de marzo de 2026.

Comparece la Sra. Cruz Violeta Torres Ramírez (señora Torres Ramírez o apelante) y solicita que revoquemos la *Sentencia* emitida y notificada el 23 de octubre de 2025, por el Tribunal de Primera Instancia (TPI), Sala Superior de Ponce. Mediante el referido dictamen, el foro primario acogió la solicitud de sentencia sumaria presentada por la parte apelada, First Hospital Panamericano, Inc. (FHP) y desestimó sumariamente la querella de despido injustificado, discrimen por edad, represalias y daños y perjuicios, incoada por la señora Torres Ramírez.

Por los fundamentos expuestos a continuación, confirmamos la sentencia apelada.

## I.

El 8 de marzo de 2021, la señora Torres Ramírez instó una *Querella*[1] contra FHP, al amparo del procedimiento sumario de la Ley Núm. 2 de 17 de octubre de 1961 (Ley Núm. 2), 32 LPRA sec.

---

[1] Véase, expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC) en el caso PO2021CV00568, entrada1.

3118 *et seq.* En resumen, adujo que trabajó para dicha compañía desde el 16 de noviembre de 1995, hasta el 4 de septiembre de 2020, cuando presentó su carta de renuncia a su empleo. Además, alegó haber sido víctima de despido constructivo, discrimen por razón de edad, represalias y daños y perjuicios, mediante un patrón ininterrumpido de eventos iniciados desde finales del año 2017 hasta el 4 de septiembre de 2020. En consecuencia, solicitó las indemnizaciones correspondientes, conforme a las disposiciones de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada (Ley Núm. 80), 29 LPRA sec. 185a *et seq.*; la Ley Núm. 100 de 30 de junio de 1959, según enmendada (Ley Núm. 100), 29 LPRA 145 *et seq.*; y, la Ley Núm. 115 de 20 de diciembre de 1991, según enmendada (Ley Núm. 115), 29 LPRA 194 *et seq.*; así como los honorarios de abogado correspondientes.

El 30 de marzo de 2021, FHP presentó su *Contestación a Querella*[2] en la que negó las alegaciones y levantó una serie de defensas afirmativas. Entre éstas, que la querella no aducía hechos que justificaran la concesión de algún remedio, que ésta se encontraba prescrita en todo o en parte, que la señora Torres Ramírez no fue objeto de discrimen por razón de su edad ni hubo represalias en su contra, y que tampoco FHP la despidió expresa, directa, indirecta o tácitamente.

Tras varias incidencias procesales -entre ellas, la conversión del procedimiento sumario a uno ordinario[3] y la presentación de un recurso de *certiorari*, atendido por otro panel de este Tribunal mediante *Sentencia*[4]- y culminado el descubrimiento de prueba,

---

[2] *Contestación a Querella, Íd.,* entrada 6.

[3] *Minuta-Resolución* de la vista argumentativa del 15 de febrero de 2022, *Íd.,* entrada 58.

[4] La *Sentencia* del recurso KLCE202301212 fue emitida el 20 de mayo de 2024. El panel estableció que la defensa afirmativa de prescripción no fue renunciada por FHP y que el adecuado proceder del TPI debió ser ordenar la enmienda a la alegación correspondiente a la prescripción. El Tribunal Supremo, declaró *no ha lugar* a las sendas peticiones de *certiorari* presentadas por FHP, CC-2024-0416, y la señora Torres Ramírez, CC-2024-0418. Así pues, FHP presentó ante el TPI su

FHP presentó una *Moción de Sentencia Sumaria*[5] debidamente fundamentada en las admisiones de la señora Torres Ramírez en su toma de deposición, así como en las políticas de recursos humanos de la empresa conocidas por la empleada. En la moción, FHP presentó dieciséis (16) hechos sobre los cuales, a su entender, no existía controversia, y argumentó que procedía desestimar la querella incoada por la señora Torres Ramírez.

Respecto a la causa de acción de despido constructivo, FHP indicó que, según las alegaciones de la querella, las supuestas acciones dirigidas a forzar a la señora Torres Ramírez a renunciar comenzaron allá para diciembre de 2017, esto fue, tres (3) años antes a su renuncia mediante carta de 4 de septiembre de 2020, por lo que, según infirió, las condiciones descritas en la querella no pudieron haber sido "tan difíciles y poco placenteras" como para forzarla a renunciar. Así, FHP planteó que el tiempo transcurrido impedía la conclusión de despido tácito.

En cuanto a la causa de acción de discrimen por edad, FHP arguyó que la ausencia de un despido derrotaba automática e inexorablemente la causa de acción de despido discriminatorio por razón de edad. En la alternativa, expuso que conforme lo expresado por la señora Torres Ramírez en sus alegaciones y en la deposición, ésta no logró establecer un caso *prima facie* de discrimen, ya que fue incapaz de demostrar que FHP tomara una acción adversa en el empleo contra ella, con la intención y ánimo discriminatorio en atención a su edad y, mucho menos que se hubiera beneficiado a otra persona que no formara parte de un grupo protegido.

Sobre las alegaciones de represalias, FHP aseveró que la prueba de la señora Torres Ramírez no logró establecer que participó

---

*Contestación Enmendada a Demanda* en la que únicamente rectificó la defensa afirmativa de prescripción. *Íd.,* entradas 139-141 y 143.

[5] *Moción de Sentencia Sumaria, Íd.,* entrada 168.

en una actividad protegida, ni que entre la referida acción y su despido concurrieran los elementos de temporalidad y causalidad que requiere la Ley Núm. 115, *supra,* y la doctrina aplicable.

En la *Oposición a Moción de Sentencia Sumaria*[6], la señora Torres Ramírez aceptó como incontrovertidos trece (13) de los dieciséis (16) hechos expuestos por FHP y propuso treinta y dos (32) hechos incontrovertidos adicionales. A su vez, expuso que había controversia en cuanto a la existencia de un horario fijo de trabajo, porque una vez ésta utilizó los canales internos para que el patrono atendiera sus quejas, fue abacorada de trabajo que imprecisaba su hora de salida. Añadió que también existía controversia respecto a las funciones que ejecutaba en beneficio del patrono, alegando que excedían las responsabilidades de la descripción de su puesto; así también sobre el recuento de incidentes ocurridos, la presunta inacción del patrono y el efecto que ello tuvo en la salud de la empleada.

La señora Torres Ramírez explicó que FHP ignoró su reclamo para que le mejoraran sus condiciones de trabajo desde diciembre de 2017, y posteriormente la castigó abacorándola de trabajo, al punto de causarle un colapso físico y emocional, debido a la carga excesiva de trabajo asignado posterior al Huracán María, a pesar de conocer su condición de salud y limitaciones físicas desde el año 2015. También sostuvo que, los continuos e ininterrumpidos actos de discrimen por razón de su edad se agudizaron, a pesar de los acercamientos al patrono, con el único propósito de forzar su renuncia. La señora Torres Ramírez arguyó que fue discriminada por razón de edad cuando su homóloga pasó a ser su supervisora y coordinadora en el programa en el que ambas trabajaban, sin habérsele ofrecido dicho puesto a la demandante, quien contaba con

---

[6] *Oposición a Moción de Sentencia Sumaria, Íd.*, entrada 175.

mayor experiencia y mayor tiempo trabajando para FHP. Además, afirmó haber sido víctima de humillaciones y comentarios discriminatorios por su edad por parte de otros compañeros, que le causaron daños e intensas angustias mentales. Por último, la señora Torres Ramírez sostuvo que las represalias de FHP en su contra consistieron en privarla de trabajar, aun existiendo opciones que se atemperaban a las recomendaciones de sus médicos. De tal forma, ante la existencia de controversia sobre los hechos del caso argüida, la señora Torres Ramírez solicitó al tribunal que denegara la solicitud de sentencia sumaria de FHP y continuara con los procedimientos.

El 27 de mayo de 2025, FHP instó una *Réplica a Oposición a Moción de Sentencia Sumaria[7],* en la que fijó su postura en cuanto a los hechos incontrovertidos adicionales propuestos por la señora Torres Ramírez. El TPI denegó la *Solicitud para Reaccionar a Réplica a Oposición a Moción de Sentencia Sumaria* presentada por la señora Torres Ramírez el 28 de mayo de 2025, mediante orden dictada el 25 de junio de 2025, explicando que la oportunidad brindada a FHP se circunscribió a fijar su posición única y exclusivamente sobre los hechos adicionales incontrovertidos propuestos por la apelante.[8]

Sometido el asunto, el 23 de octubre de 2025, el TPI notificó a las partes la *Sentencia[9]* objeto del presente recurso. En ella, el foro primario enumeró los siguientes hechos sobre los cuales no existía controversia:

> 1. La Sra. Cruz Violeta Torres Ramírez (en adelante Torres Ramírez) comenzó su empleo en First Hospital Panamericano, Inc., Oficinas del Programa de Hospitalización Parcial (en adelante, Programa Parcial) ubicada en Ponce, el 16 de noviembre de 1995. Durante todo su tiempo de empleo en FHP Torres ocupó la posición de Terapista Primario.

---

[7] *Réplica a Oposición a Moción de Sentencia Sumaria, Íd.,* entrada 191.
[8] *Íd.,* entradas 192 y 194.
[9] *Sentencia, Íd.,* entrada 202.

2. Torres Ramírez, al igual que los restantes Terapistas Primarios de FHP, tenía la clasificación de empleada exenta.

3. Su horario regular de trabajo consistía y se mantuvo desde que comenzó su empleo en FHP de lunes a viernes de 8 am a 5 pm.

4. Tras la restructuración realizada en marzo de 2018, post periodo de emergencia del Huracán María, la jornada de trabajo de Torres Ramírez consistió en horarios irregulares, con hora de entrada, sin hora de salida, lo cual se debía a la necesidad de servicio de la Institución.

5. Torres recibió de FHP copia de varias políticas de empleo. La Política de prevención de discriminación y hostigamiento fue una de ellas.  Otra fue la Política de Igualdad de Oportunidad de Empleo de FHP.

6. Torres estaba familiarizada con la Política de Quejas, Querellas y Peticiones de FHP.

7. La Política de Igualdad de Oportunidad de Empleo expresa que FHP prohíbe el discrimen en empleo por, entre otras clasificaciones protegidas, la edad, así como las represalias por traer a la atención de la Compañía inquietudes o insatisfacciones.  La Política contiene un procedimiento a seguir por los empleados para traer a la atención de la Compañía quejas, inquietudes o insatisfacciones de discrimen y represalias.

8. Como Terapista Primario Torres tenía y ejecutaba las responsabilidades que se describen en la Descripción de Puesto que figura en el Anejo 5, así como otras funciones en beneficio de los intereses del Patrono.

9. Durante el tiempo de empleo de Torres con FHP la Compañía tuvo implementado un Manual de Empleados. Torres lo recibió y conocía su contenido.

10. El Manual del Empleado contenía una Política de Igualdad de Oportunidades de Empleo, una Política de Prevención de Discriminación y Hostigamiento y una Política de Querellas, Quejas y Peticiones, todas las cuales Torres conocía.

11. La Política de Igualdad de Oportunidades de Empleo contenía una declaración de que FHP no discriminaba contra sus empleados, ni en el reclutamiento, ni en la selección de empleados, ni en los salarios y beneficios que pagaba a sus empleados y en ninguna otra transacción de empleo; también, que no discriminaba por razón de raza, sexo, color, ideas políticas y religiosas, discapacidad ni edad.

12. La Política de Prevención de Discriminación y Hostigamiento contiene una declaración de FHP de que las represalias en el empleo por hacer uso de la política por parte de los empleados están prohibidas.

13. La Política de Prevención de Discriminación y Hostigamiento exhorta a los empleados a que si tuviesen un reclamo de discriminación en el empleo pueden utilizar la misma para planteárselo a FHP.

14. La Política de Querellas, Quejas y Peticiones está diseñada para que cualquier empleado que entienda que tiene algún reclamo, queja o querella contra algún supervisor o contra FHP como institución utilice los pasos allí consignados para llevar su reclamo.

15. Esa Política indica que ningún empleado puede ser penalizado por presentar una queja o querella bajo el procedimiento de cuatro pasos que para ello contiene.

16. La demandante Torres Ramírez comenzó a hacer quejas verbales y escritas a la parte demandada desde diciembre de 2017, en cuanto a sus condiciones de trabajo hasta el 4 de septiembre de 2020.

17. Desde el 27 de julio de 2018 la demandante Torres Ramírez notificó por escrito a FHP sobre la sobrecarga de trabajo, razón por la que solicitó se le asignara otra terapista, ya que, la demandante estaba trabajando entre 10 y 13 horas diarias.

18. El 16 de agosto de 2018 la Sra. Aida Rodríguez, Directora de Recursos Humanos, cursó correo electrónico a la Sra. Saribell Martínez notificando sobre una reunión con Torres Ramírez relacionado al acomodo razonable que esta solicitó, recomendando que la solicitud se trabaje a la brevedad posible.

19. El 16 de agosto de 2018 la Sra. Aida Rodríguez, cursó correo electrónico a Saribell Martínez, en la cual se hace constar que le informó a Torres Ramírez que "la intención de FHP cuando se hizo la reorganización era que en días de muchos pacientes, se solicitara la ayuda de Ileana para que Karen pudiera dar apoyo", asunto que la demandante informó que no ha pasado. Aida Rodríguez recomendó que la solicitud de acomodo debía trabajarse a la brevedad posible.

20. El 5 de septiembre de 2018, la Sra. Aida Rodríguez cursó carta a la demandante haciendo constar que su solicitud de acomodo razonable había sido recientemente evaluada, instruyéndose a los supervisores inmediatos para conceder los debidos arreglos, pues las recomendaciones médicas daban base al acomodo razonable, siendo las alternativas las siguientes: la coordinadora evaluará la cantidad de pacientes e intervenciones y solicitará apoyo de ser necesario; "[l]a Coordinadora ofrecerá dos grupos diarios; [l]a Sra. Ileana Morales estará disponible en caso de necesitarla; [s]i es necesario, la secretaria estará más tiempo para que la Coordinadora pueda dar apoyo; y dependiendo del censo, si hay la necesidad de otro TP [Terapista Primario] se solicitará a través de la Coordinadora".

21. El 26 de octubre de 2018 la demandante Torres Ramírez nuevamente notificó por escrito sobre el horario excesivo de trabajo, el cual fluctuaba entre 10 y 14 horas diarias.

22. El 29 de octubre de 2018 la Sra. Aida Rodríguez cursó carta a la demandante indicando lo siguiente: es necesario que llenara el reporte del FSE para que pueda recibir los servicios; que desde el primer día de su solicitud se comenzaron a buscar soluciones para atender su situación y distribuir las tareas; que durante su reunión del 25 de octubre de 2018 esta le preguntó específicamente si las alternativas que trabajaron le estaban ayudando a lo que Torres Ramírez respondió que sí, indicando que todo estaba mejor, e inclusive surge que Torres había salido más temprano en los pasados días y que las vacaciones le habían ayudado a recargas baterías. Expresó que durante la reunión, Torres Ramírez no había expresado descontento alguno, ni objeciones a la carta del 5 de septiembre de 2018. Solicitó a Torres Ramírez que una vez se reinstale en sus labores le llamara para coordinar una reunión, reevaluar las alternativas ofrecidas y evaluar nuevamente su solicitud.

23. El 2 de noviembre de 2018 la demandante Torres Ramírez cursó carta a la Sra. Aida Rodríguez en donde manifestó que el 23 de octubre de 2018 volvió a hablar sobre su situación con la Sra. Martínez, indicó que los días 23 y 24 de octubre de 2018 completó su jornada laboral a las 6:00 y 5:30 de la tarde, respectivamente; que el 25 de octubre de 2018 la Sra. Rodríguez se reunió con ella para discutir el acomodo solicitado y la demandante señaló que por su evidente indisposición de salud la organización ha decidido asignar dos terapistas primarias para así poder completar las labores y funciones que hasta el 25 de octubre de 2018 eran su total responsabilidad.

24. Según la señora Rodríguez Pérez las quejas de empleados se podían realizar y manejar de manera verbal o escrita.

25. Las quejas de los empleados eran notificadas usualmente o por lo regular de manera verbal al Sr. Astro Muñoz, CEO/Managing Director de FHP.

26. El Sr. Astro Muñoz tuvo conocimiento de las quejas de la demandante Torres Ramírez en varios momentos.

27. Desde el año 2015, FHP contaba con un Certificado Médico donde se indicaba que la demandante Torres Ramírez no podía viajar largas distancias, ni levantar mucho peso.

28. La demandante Torres Ramírez nunca fue amonestada por deficiencias en su trabajo.

29. El edificio donde ubicaba el Programa Parcial de Ponce sufrió daños como resultado de los temblores en

enero de 2020, no se podía utilizar el edificio y cerró operaciones.

30. La demandante Torres Ramírez no fue despedida como parte del cierre de operaciones de FHP en enero de 2020 y solicitó a la Sra. Carmen Jiménez, quien era directora de Servicios Clínicos, que le diera la oportunidad de relocalizarse en la Unidad de San Juan Panamericano en donde trabajó desde febrero hasta el 20 de marzo de 2020.

31. El 7 de abril de 2020, la demandante Torres Ramírez cursó correo electrónico a la Sra. Mildred Figueroa, acompañando carta a la Sra. Aida Rodríguez, Directora de Recursos Humanos, solicitando licencia debido a su vulnerabilidad ante el Covid-19.

32. El 22 de mayo de 2020, la demandante Torres Ramírez entregó un Certificado Médico del Dr. George P. Fahed Iñigo, en el cual se indicaba que esta podía regresar a trabajar. No obstante, se le debía proveer los equipos básicos de protección personal que incluían, pero no se limitaban a respirador N95, bata y protector de rostro. Además, se recomendó mantener una distancia física de seis (6) pies, mientras fuera posible.

33. El 22 de mayo de 2020, la Sra. Aida Rodríguez notificó al Sr. Peter González que la demandante Torres Ramírez ya está disponible para reintegrarse a trabajar.

34. El 29 de mayo de 2020, la Sra. Aida Rodríguez cursó carta a la demandante notificando que debido a la pandemia Covid-19, FHP enfrentó la necesidad crítica de manejar los efectos de la crisis en las operaciones comerciales, debido a la pandemia, algunos departamentos y puestos han experimentado una disminución significativa de la demanda de servicios; tomando la decisión de implementar una reducción de horas a cero (cesantía temporera) debido a la falta de trabajo, que incluía la posición de la demandante, al 29 de mayo de 2020. Además, notificó que preveía que la cesantía temporera duraría entre 4 a 12 semanas, y que durante el periodo de cesantía temporera Torres Ramírez continuaría siendo empleado de la Institución, siendo elegible para continuar con la cobertura de beneficios y el pago de primas del beneficio de plan médico. FHP informó de la opción de Torres Ramírez usar las horas acumuladas de vacaciones para reemplazar sus horas regulares, u optar por tiempo sin paga, así como que era elegible para la compensación por desempleo.

35. El 10 de junio de 2020 la demandante Torres Ramírez entregó un Certificado Médico del Dr. Reynaldo De Jesús Rodríguez, donde se indicaba que esta podía trabajar. No obstante, se recomendó permanecer en su área local residencial, no levantar, halar o empujar pesos mayores a quince (15) libras, no estar sentada, ni parada por periodos mayores de dos (2) horas consecutivas, no realizar viajes de largas distancias y evitar traumas al área cervical y lumbar.

36. El 28 de agosto de 2020, la Sra. Aida A. Rodríguez, Directora de Recursos Humanos, cursó carta a la demandante en donde hizo referencia a la certificación médica del 10 de junio de 2020, informó al reinstalarla en ese día que se evaluó la solicitud de acomodo razonable, que en este momento le podían conceder la solicitud de no levantar más de 15 libras, ni estar sentada ni parada por un periodo mayor de dos horas. Además, le informaron que no podía ubicarla en un centro de trabajo cerca de la casa de la demandante y que en la eventualidad de que el censo del Hospital comenzara a aumentar y se mantuviera estable, esperaban ubicar a la demandante en sus funciones de Terapista Primaria en el Hospital de Ponce y/o dando apoyo al Parcial, dependiendo la necesidad.

37. La Sra. Bermarylies Alicea Rodríguez fue contratada por FHP como contratista independiente del 3 de octubre de 2018 al 2 de octubre de 2019 para prestar servicios como Trabajador Social en el Departamento de Servicios Clínicos. Posteriormente, fue contratada por FHP como contratista independiente del 20 de noviembre de 2019 al 19 de noviembre de 2020, para prestar servicios como Evaluadora Clínica en el Departamento de Admisiones. Luego, pactó acuerdo de servicios profesionales con FHP como contratista independiente del 27 de julio de 2020 al 27 de julio de 2021, para prestar servicios como Evaluadora On-Call del Mobile Assessment.

38. La Sra. Ileana Morales Colón estableció que la demandante Torres Ramírez era la terapista de mayor antigüedad en First Hospital Panamericano Ponce, que le llamó la atención que no hubieran llamado a la demandante para regresar y que a ella tampoco la habían llamado, aunque posteriormente lo hicieron.

39. Al reabrir operaciones el Parcial de Ponce de forma limitada en mayo de 2020, la Sra. Karen Pabón fue nombrada Coordinadora del Parcial Ponce y como Terapista Primario, por haber fungido previamente como coordinadora y terapista primario y por razón del bajo censo de pacientes. En adición, la Sra. Karen Pabón tenía licencia de consejería en adicción que la demandante no tenía.

40. Mediante carta de 4 de septiembre de 2020, Torres dio por finalizado su empleo con FHP. En su carta planteó, y asimismo lo alega en la demanda de epígrafe para que el Tribunal determine tomando en cuenta la posición de FHP, que su renuncia constituía un despido tácito o constructivo.

41. A la fecha del 4 de septiembre de 2020 Torres Ramírez era una empleada exenta con un sueldo fijo de $60,584.54 anual.

42. Mediante carta de 10 de septiembre de 2020, FHP le aceptó a Torres su renuncia al empleo y negó las alegaciones que Torres hizo en su carta de renuncia.[10]

Basado en las anteriores determinaciones de hechos, el TPI concluyó que mediaron circunstancias que justificaban las acciones de FHP, que no constituyeron un mero capricho del patrono, sino que estuvieron vinculadas a la ordenada marcha y normal funcionamiento de la empresa, en respuesta a eventos naturales e históricos ocurridos en Puerto Rico, tales como el Huracán María en septiembre de 2017, el terremoto en enero de 2020 y la Pandemia de Covid-19. Explicó el tribunal que las situaciones acaecidas no imputables a la obrera justificaban las medidas de cierre temporal de las operaciones del establecimiento de FHP en Ponce, así como las reducciones en empleo que se hicieron necesarias debido a la reducción del censo en el Programa de Parciales en Ponce, en el que laboraba la señora Torres Ramírez. Específicamente, el TPI destacó que:

> los requerimientos realizados por la demandante a tenor con las circunstancias luego del Huracán María fueron atendidos por el patrono demandado en el 2018, particularmente para octubre de ese año. Desde octubre de 2018 hasta septiembre de 2020 no se pone en posición al Tribunal de ninguna circunstancia que se pueda atribuir a la parte demandada que haya provocado algún tipo de malestar o incomodidad en el ámbito laboral a la parte demandante. Tampoco podemos perder de perspectiva, como indicáramos anteriormente, que surge de la prueba presentada que el Programa Parcial de Ponce cerró operaciones porque sufrió daños como consecuencia de los temblores en enero de 2020, y que a pesar de esas circunstancias extraordinarias que pudieron haber justificado decisiones aún m[á]s drásticas por parte del patrono demandado, la demandante no fue despedida. Inclusive, a solicitud de la demandante, el demandado relocalizó a la demandante en la Unidad de San Juan Panamericano donde trabajó desde febrero hasta el 20 de marzo de 2020. En marzo de 2020 se decretó la emergencia por la Pandemia de Covid-19. Posteriormente, en abril de 2020 la demandante solicitó una licencia que le fuera concedida por el patrono demandado, y en mayo de 2020 la parte demandada notificó a la demandante de circunstancias que justificaban una cesantía temporera que duraría entre

---

[10] *Íd.,* a las págs. 20-25.

4 a 12 semanas. Advirtió el demandado a la demandante de los beneficios que retendría, los derechos que le asisten y le brindó alternativas ante las circunstancias expuestas en la comunicación. Posteriormente, en agosto de 2020 el patrono demandado estuvo en condiciones de reinstalar a la demandante pero, tomando en consideración el último certificado médico presentado por la parte demandante, no pudo conceder el acomodo razonable solicitado a los efectos de ubicar a la demandante en Ponce. No obstante, advirtieron a la demandante que en la eventualidad de que el censo del hospital aumentara y se mantuviera estable, esperaban poder ubicarla en sus funciones en Ponce. El 4 de septiembre de 2020 la demandante dio por finalizado su empleo con la demandante.[11]

En vista de lo anterior, el TPI resolvió que la señora Torres Ramírez no pudo establecer, ni mucho menos demostrar que la única alternativa razonable era el abandono del cargo. El foro apelado sentenció, además, que la señora Torres Ramírez tampoco colocó al juzgador en posición de concluir que recibió un trato desigual ni injustificado, o que se hubiera discriminado por su edad o tomado alguna represalia en su contra. En virtud de lo anterior, el TPI declaró *ha lugar* a la *Moción de Sentencia Sumaria* presentada por FHP y desestimó la querella de la señora Torres Ramírez.

La *Solicitud de Reconsideración*[12] incoada el 7 de diciembre de 2025 por la señora Torres Ramírez fue denegada por el TPI mediante *Resolución interlocutoria*[13] notificada el 1 de diciembre de 2025.

Inconforme con la determinación del foro apelado, el 7 de enero de 2026, la señora Torres Ramírez incoó el recurso que apelación[14] nos ocupa, en el que apuntó los siguientes señalamientos de error:

PRIMER ERROR: ERRÓ EL TPI AL NO PERMITIR QUE LA PARTE APELANTE REPLICARA A LOS PLANTEAMIENTOS DE LA APELADA AÚN CUANDO DICHA PARTE YA HABÍA TENIDO DOS (2) OPORTUNIDADES SOBRE UN MISMO ASUNTO Y LA PARTE APELANTE UNO (1), Y LA REGLA 36 NO DISPONE QUE LA PARTE PROMOVENTE TENGA QUE

---

[11] *Íd.,* a la pág. 38.
[12] *Solicitud de Reconsideración, Íd.*, entrada 204.
[13] *Resolución interlocutoria, Íd.*, entrada 207.
[14] SUMAC-TA, entrada 1.

CONTROVERTIR LOS HECHOS INCONTROVERTIDOS PROPUESTOS POR LA PARTE PROMOVIDA EN SU OPOSICIÓN A UNA SOLICITUD DE SENTENCIA SUMARIA.

SEGUNDO ERROR: ERRÓ EL TPI AL DESESTIMAR TODAS LAS CAUSAS DE ACCIÓN PRESENTADAS POR LA PARTE APELANTE, PRIVÁNDOLA DE SU DÍA EN CORTE, Y DESPOJÁNDOLA DE TODO REMEDIO EXISTENTE.

TERCER ERROR: ERRÓ EL TPI AL OMITIR LA DETERMINACIÓN PREVIA TOMADA POR ESTE HONORABLE TRIBUNAL PASANDO POR ALTO LA DOCTRINA DE LA LEY DEL CASO.

La apelada FHP presentó su alegato en oposición a apelación el 6 de febrero de 2026.[15]  En cuanto al primer señalamiento de error, adujo que los autos del caso demostraban claramente que, al adjudicar las mociones dispositivas, el TPI cumplió a cabalidad con lo que dispone la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, respecto al manejo procesal y sustantivo de una solicitud de sentencia sumaria.  Respecto al tercer señalamiento de error, indicó que la determinación previa a la que se hace referencia en el escrito de apelación versó sobre la denegatoria a una moción de desestimación adjudicada al palio de la Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2(5), distinto al estándar de evaluación aplicable a una moción de sentencia sumaria a tenor con la concernida Regla 36 del mismo cuerpo reglamentario, razón por la cual no aplicaba la doctrina de ley del caso al adjudicar la solicitud de sentencia sumaria.  Por último, al abordar el segundo señalamiento de error, FHP razonó que la señora Torres Ramírez no rebatió o controvirtió lo esbozado en la moción de sentencia sumaria y el derecho aplicable justificaba la desestimación de las causas de acción, por lo que el foro apelado no incidió al dictar sentencia sumaria y desestimar las causas de acción.

Perfeccionado el recurso, resolvemos.

---

[15] *Íd.,* entrada 2.

## II.

## A.

El mecanismo de sentencia sumaria, regulado por la Regla 36 de Procedimiento Civil,[16] permite al tribunal disponer de un caso sin celebrar vista en su fondo.[17]

La Regla 36.1 de Procedimiento Civil[18], establece que una moción de sentencia sumaria debe estar fundada en declaraciones juradas, o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes.[19] Por tanto, el Tribunal podrá dictar sentencia sumaria si de las alegaciones, deposiciones, contestaciones, interrogatorios y admisiones ofrecidas, junto a las declaraciones juradas, si las hubiere, surge que no exista ninguna controversia real sobre los hechos materiales y esenciales del caso y solo resta por resolver una controversia de estricto derecho.[20]

En otro extremo, la sentencia sumaria resulta improcedente cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial, o (4) como cuestión de derecho, no proceda.[21]

---

[16] 32 LPRA Ap. V, R. 36.
[17] *Soto y otros v. Sky Caterers,* 2025 TSPR 3; 215 DPR ___ (2025); *Cruz, López v. Casa Bella y otros,* 213 DPR 980, 993 (2024); *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 334 (2021); *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020); *Abrams Rivera v. E.L.A.,* 178 DPR 914, 932 (2010); *Nieves Díaz v. González Massas,* 178 DPR 820, 847 (2010); *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010).
[18] 32 LPRA Ap. V, R. 36.1.
[19] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 335; *Rodríguez García v. UCA,* 200 DPR 929, 940 (2018).
[20] 32 LPRA Ap. V, R. 36.3(e); *Segarra Rivera v. Int'l Shipping et al.,* 208 DPR 964, 980 (2022); *León Torres v. Rivera Lebrón,* supra; *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013); *Mejías et al. v. Carrasquillo et al.,* 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión,* supra, pág. 214; *González Aristud v. Hosp. Pavía,* 168 DPR 127, 137-138 (2006).
[21] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 335-336; *Mejías et al. v. Carrasquillo et al.,* supra, pág. 299; *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714 (1986).

La parte promovida tiene el deber de refutar los hechos alegados, con prueba que controvierta la exposición de la parte que solicita la sentencia sumaria.[22] En este sentido, la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación. Dicha parte está obligada a controvertir la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente en su solicitud, ya que, de no hacerlo, corre el riesgo de que de dicte sentencia sumaria en su contra, de proceder en derecho.[23]

Sin embargo, el hecho de que la otra parte no presente prueba que controvierta la evidencia presentada por la parte promovente de la moción de sentencia sumaria, no implica necesariamente que dicha moción procederá automáticamente si realmente existe una controversia sustancial sobre hechos esenciales y materiales.[24]

Asimismo, toda inferencia que se haga de los hechos incontrovertidos debe hacerse de la manera más favorable a la parte que se opone a la misma.[25] A tono con este principio, el Tribunal Supremo ha indicado que, "[a]l considerar la moción de sentencia sumaria se tendrán como ciertos los hechos no controvertidos que consten en los documentos y las declaraciones juradas ofrecidas por la parte promovente."[26]

En el caso de un foro apelativo, este debe utilizar los mismos criterios que el tribunal sentenciador al determinar si procede dictar sentencia sumaria, sin embargo: (1) sólo puede considerar los documentos que se presentaron ante el foro de primera instancia; y

---

[22] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 336; *León Torres v. Rivera Lebrón,* supra, pág. 44; *Ramos Pérez v. Univisión*, supra, pág. 215.

[23] *León Torres v. Rivera Lebrón,* supra, pág. 43.

[24] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 337.

[25] *Mejías et al. v. Carrasquillo et al.*, supra, pág. 300; *Corp. Presiding Bishop CJC of LDS v. Purcell,* supra, pág. 721.

[26] *Piñero v. A.A.A.,* 146 DPR 890, 904 (1998).

(2) sólo puede determinar si existe o no alguna controversia genuina de hechos materiales y si el derecho se aplicó de forma correcta.[27]

Así pues, por estar en la misma posición que el foro primario al momento de revisar las solicitudes de sentencia sumaria, el Tribunal Supremo de Puerto Rico estableció un estándar específico, que, como foro apelativo, debemos utilizar. A tales efectos, en *Meléndez González, et al. v. M. Cuebas*[28], indicó que, de entrada, debemos revisar que tanto la moción de sentencia sumaria, así como su oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil.[29] Subsecuentemente, si existen hechos materiales controvertidos, "el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos".[30] Por el contrario, si encontramos que los hechos materiales del caso son incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente la norma jurídica aplicable a la controversia que tuvo ante sí.[31]

El modelo de sentencia sumaria por insuficiencia de prueba fue adoptado por el Tribunal Supremo en *Medina v. M.S. & D. Química P.R., Inc.*[32]. Esta modalidad procede cuando la parte demandante no cuenta con evidencia suficiente para probar su caso.[33] Específicamente, el promovente debe establecer que: (1) el juicio en su fondo es innecesario; (2) el demandante no cuenta con evidencia suficiente para probar algún hecho esencial a su

---

[27] *Segarra Rivera v. Int'l Shipping et al.,* supra, pág. 981; *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 337-338; *Const. José Carro v. Mun. Dorado,* 186 DPR 113, 129 (2012).
[28] 193 DPR 100 (2015).
[29] *Íd.,* pág. 118.
[30] *Íd.,* pág. 119.
[31] *Íd.,* seguido en *Segarra Rivera v. Int'l Shipping et al.,* supra, págs. 981-982.
[32] 135 DPR 716 (1994).
[33] *Rodríguez Méndez v. Laser Eye,* 195 DPR 769, 786 (2016).

reclamación; y, (3) como cuestión de derecho, procede la desestimación de la reclamación.[34]

No obstante, para disponer de un pleito por dicho fundamento es indispensable que se le haya brindado a la parte promovida amplia oportunidad para realizar un descubrimiento de prueba y que se demuestre que la prueba descubierta no satisface los elementos necesarios para establecer su causa de acción.[35] Por su lado, la parte promovida no puede evitar tal solicitud "por el mero pretexto de que, a pesar de no contar con evidencia suficiente para probar un elemento indispensable para su reclamación, merece su 'día en corte'"[36]. Así que, para derrotar una moción de sentencia sumaria bajo la modalidad de la insuficiencia de la prueba, la parte promovida puede, entre otras cosas presentar con su oposición una prueba admisible en evidencia o una prueba que pueda convertirse en admisible – aunque de momento no lo sea – o que dé lugar a una prueba admisible que demuestre que existe evidencia para probar los elementos esenciales de su caso; que hay prueba en el récord que puede convertirse en una prueba admisible que derrotaría la contención de insuficiencia del promovente; que la moción es prematura porque el descubrimiento es inadecuado, está a medias o no se ha realizado, o que éste, por su naturaleza, no es un caso que conviene que se resuelva por el mecanismo expedito de la sentencia sumaria.[37]

Valga apuntar que, a la modalidad de sentencia sumaria por insuficiencia de la prueba le aplican todos los principios que deben utilizarse por los tribunales al resolver una solicitud de sentencia sumaria.[38] Por ello, podrá dictarse sentencia sumaria solamente cuando no exista ninguna controversia real sobre los hechos

---

[34] *Íd.*
[35] *Íd.,* pág. 787.
[36] *Íd.*
[37] *Medina v. M.S. & D. Química P.R., Inc.,* supra, pág. 734.
[38] *Íd.*

materiales y esenciales del caso[39] y, además, si en derecho procede el reclamo.[40] "[C]uando existe duda sobre si hay o no prueba suficiente o si hay una controversia de hecho, esta duda debe resolverse en favor de la parte promovida"[41].

Así pues, el mecanismo de sentencia sumaria es un remedio discrecional que procederá solo cuando el tribunal quede claramente convencido de que tiene ante sí documentos no controvertidos, que no existen controversias sobre hechos materiales y esenciales, y que, por lo tanto, lo que resta es aplicar el derecho, ya que una vista en los méritos resultaría innecesaria.[42]

Hay que señalar que una sentencia sumaria, por constituir una decisión en los méritos es el precedente de cosa juzgada[43] cuando se opone entre partes debidamente relacionadas.[44] Por ello, se ha advertido que, antes de resolver una controversia por la vía sumaria, el juzgador habrá de discernir cuidadosamente al respecto, pues "mal utilizada, puede prestarse para despojar a un litigante de su 'día en corte', principio elemental del debido proceso de ley"[45].

De otra parte, el Tribunal Supremo ha señalado que no es aconsejable dictar sentencia sumaria en casos cuyas controversias versan esencialmente sobre asuntos de credibilidad o involucren aspectos subjetivos, como lo es la intención, los propósitos mentales o la negligencia.[46] Sin embargo, también se ha dicho que ello no

---

[39] Un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable". *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). A su vez, la controversia relacionada a un hecho material debe ser real, "por lo que cualquier duda es insuficiente para derrotar una Solicitud de Sentencia Sumaria". *Íd.*, págs. 213-214.

[40] *SLG Zapata-Rivera v. J.F. Montalvo*, supra.

[41] *Medina v. M.S. & D. Química P.R., Inc.,* supra.

[42] *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004). Véase, además, *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Pérez Vargas v. Office Depot*, 203 DPR 687, 699 (2019).

[43] El efecto de la aplicación de la doctrina de cosa juzgada es que la sentencia emitida en un pleito anterior impide que se litiguen posteriormente, entre las mismas partes y sobre las mismas causas de acción y cosas, las controversias ya litigadas y adjudicadas, y aquellas que se pudieron haber litigado. *Mun. De San Juan v. Bosque Real, S.E.,* 58 DPR 743, 769 (2003).

[44] *Vera v. Dr. Bravo*, supra, pág. 335.

[45] *González v. Alicea, Dir. Soc. Asist. Legal,* 132 DPR 638, 646-647 (1993).

[46] *Segarra Rivera v. Int'l Shipping et al.,* supra, págs. 980-981; *Aponte Valentín et al. v. Pfizer Pharm.*, 208 DPR 263, 278 (2021).

impide la utilización del mecanismo de sentencia sumaria en las reclamaciones que requieran elementos subjetivos o de intención cuando de los documentos que serán considerados en la solicitud de sentencia sumaria surja que no existe controversia en cuanto a los hechos materiales.[47]

**B.**

Nuestro sistema jurídico no prohíbe el despido de un empleado.[48] La Ley Núm. 80 de 30 de mayo de 1976, conocida como *Ley de Indemnización por Despido Injustificado* (Ley Núm. 80), 29 LPRA sec. 185a *et seq.*, tiene el propósito de proteger el derecho de los trabajadores frente a acciones arbitrarias y caprichosas de los patronos.[49] En ese contexto, la legislación impone el pago de una indemnización conocida como *mesada* al patrono que sin justa causa despida a un empleado que es contratado por un periodo de tiempo indeterminado.[50]

La Ley Núm. 80, *supra,* define *despido* como la cesantía del empleado, su suspensión indefinida o por un término que exceda de tres (3) meses y la **renuncia del empleo motivada por actuaciones del patrono dirigidas a inducirlo o forzarlo a renunciar**, tales como imponerle o intentar imponerle condiciones de trabajo más onerosas, reducirle el salario, rebajarlo en categoría o someterlo a vejámenes o humillaciones de hecho o de palabra.[51] Es decir, el trabajador se siente tan incómodo con la situación laboral imperante en su lugar de empleo que no tiene otro remedio que abandonarlo.[52] A esta modalidad de despido se le conoce como despido constructivo o tácito.[53]

---

[47] *Íd.*
[48] *Segarra Rivera v. Int'l. Shipping et al,* 208 DPR 964, 982 (2022).
[49] Ley Núm. 80 (Exposición de Motivos); *Segarra Rivera v. Int'l. Shipping et al.,* supra, págs. 982-983.
[50] El importe por concepto de mesada se define en atención a lo dispuesto en el Art. 1 de la Ley Núm. 80, 29 LPRA sec. 185a.
[51] 29 LPRA sec. 185e.
[52] *León Torres v. Rivera Lebrón,* 204 DPR 20, 38 (2020).
[53] *Rivera Figueroa v. The Fuller Brush Co.,* 180 DPR 894, 907 (2011).

El Tribunal Supremo específicamente ha aclarado que el despido constructivo consiste en aquellos actos voluntarios e injustificados realizados por un patrono, encaminados a obligar al empleado a dejar su trabajo, siendo la única alternativa razonable que le queda al empleado abandonar el cargo.[54] Por tanto, no basta con cualquier molestia o condición antipática en el empleo, y, cuando se trate de vejámenes y humillaciones, estos deben ser de magnitud sustancial.[55]

La magnitud y el efecto de los actos patronales no se determina con referencia a la visión subjetiva del empleado individual. Más bien, se utiliza un criterio objetivo al examinar si una persona razonable se sentiría forzada a renunciar como resultado de las acciones del patrono. Por tanto, no basta una mera alegación de que la renuncia fue un despido constructivo. Es decir, hace falta demostrar el despido, sea directo o en su modalidad constructiva o tácita.[56]

Por otro lado, la Ley Núm. 80, *supra,* menciona varios escenarios que liberan al patrono de responsabilidad. Algunos de estos supuestos están basados en conducta atribuible al empleado, mientras que otras responden al curso decisorio de la gerencia empresarial.[57]

En particular, los incisos (d), (e) y (f) del Art. 2 de la Ley Núm. 80, *supra,* incluyen las circunstancias que afectan el buen y normal funcionamiento de una empresa y que, por lo tanto, justifican el despido de empleados. Específicamente, estos incisos consideran como justa causa para el despido de empleados los siguientes escenarios:

---

[54] *Íd.*, pág. 908; *S.L.G. Hernández-Beltrán v. TOLIC,* 151 DPR 754, 777 (2000); *Arthur Young & Co. v. Vega III,* 136 DPR 157, 183 (1994).
[55] *Rivera Figueroa v. The Fuller Brush Co.,* supra, pág. 908.
[56] *Íd.,* pág. 907.
[57] *Segarra Rivera v. Int'l. Shipping et al.,* supra, pág. 983; *Indulac v. Unión,* 207 DPR 279, 298-299 (2021).

(d) **Cierre** total, **temporero** o parcial de las operaciones del establecimiento.

(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los **cambios en los servicios rendidos al público**.

(f) **Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias**, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento. (Énfasis suplido).[58]

Por tanto, las empresas pueden cesantear a sus empleados sin la obligación de pagar la correspondiente indemnización cuando enfrentan alguna de las precitadas circunstancias. La única limitación que impone la ley en este tipo de casos es la de "retener con preferencia en el empleo al empleado con más antigüedad siempre que subsistan puestos vacantes u ocupados por empleados de menos antigüedad en el empleo dentro de su clasificación ocupacional que puedan ser desempeñados por ellos".[59] Sin embargo, la retención por antigüedad tiene que ser dentro de la misma clasificación ocupacional y no entre clasificaciones ocupacionales distintas.[60]

En *SLG Zapata-Rivera v. J.F. Montalvo,*[61] el Tribunal Supremo tuvo la oportunidad de expresarse específicamente sobre las circunstancias que constituyen "justa causa" para el despido de empleados por razones de índole empresarial a la luz de los precitados incisos (e) y (f).

Respecto al inciso (e), el Tribunal Supremo concluyó que la reorganización debe ser bona fide, es decir, no puede ser producto del mero capricho del patrono, sino que debe ser producto de consideraciones relacionadas al manejo de la empresa. Razonó el Tribunal que siempre y cuando responda a una reestructuración

---

[58] 29 LPRA sec. 185b.
[59] 29 LPRA sec. 185c.
[60] *Segarra Rivera v. Int'l. Shipping et al.*, supra, págs. 984-985.
[61] 189 DPR 414 (2013).

bona fide, el patrono puede "modificar su forma de hacer negocios a través de algún tipo de cambio dirigido a optimizar sus recursos y aumentar las ganancias, ya sea eliminando plazas, creando otras nuevas o fusionando algunas ya existentes como vehículo para enfrentar problemas financieros o de competitividad".[62]  Empero, indicó que para que el patrono pueda justificar el despido al amparo del inciso (e) –por reorganización– debe "presentar evidencia acreditativa del plan de reorganización implantado, así como su utilidad".[63]  Basta con que el patrono acredite y satisfaga al juzgador de los hechos que la reorganización empresarial responde a una decisión empresarial válida y no a un mero capricho o arbitrariedad por parte del patrono.[64]

En lo concerniente al inciso (f) del Art. 2 de la Ley Núm. 80, *supra*, el Tribunal Supremo aclaró que, bajo este inciso, no "toda merma en ventas o ganancias se tradu[ce] en justa causa para un despido. Por el contrario, la misma aplicará únicamente a aquellas situaciones en las cuales la aludida disminución sea una sustancial al punto que atente contra la continuidad de la empresa".[65]  Ahora bien, explicó el Tribunal que, si el patrono pretende justificar el despido al amparo del inciso 2(f) –por disminución de ganancias– debe presentar evidencia que acredite "la alegada disminución en la producción, ventas o ganancias".[66]  Para ello, el patrono debe establecer un nexo causal entre las circunstancias económicas de la empresa y la necesidad del despido.[67]

En cuanto al esquema probatorio en casos de despido injustificado, La Ley Núm. 80 originalmente establecía una presunción de despido injustificado, que transfería el peso de la

---

[62] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 426 (2013).
[63] *Íd.*, pág. 427.
[64] *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 971.
[65] *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 427.
[66] *Íd.*
[67] *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 986.

prueba al patrono demandado para que éste persuadiera al tribunal de que el despido se debió a una justa causa.[68]

Sin embargo, la Asamblea Legislativa, a través de la Ley Núm. 4-2017, conocida como *Ley de Transformación y Flexibilidad Laboral*, 29 LPRA sec. 121 *et seq.*, eliminó esta presunción y devolvió el peso de la prueba a la parte demandante quien deberá cumplir con las exigencias de la Regla 110 de Evidencia. 32 LPRA Ap. VI, R. 110. Así, en el caso que se alegue un despido constructivo, el trabajador tiene que demostrar, mediante preponderancia de la prueba, que las circunstancias de su renuncia cumplen con los requisitos establecidos para llegar a esa conclusión. De tal forma, el empleado tendrá que establecer que: (1) trabaja para un patrono mediante remuneración; (2) fue contratada sin tiempo determinado, y (3) fue despedida sin que mediara una justa causa.[69]

### C.

La Ley Núm. 100 de 30 de junio de 1959 (Ley Núm. 100), 29 LPRA sec. 145 *et seq.*, establece una causa de acción civil por daños a favor de toda persona que hubiese sido despedida o de otro modo se vea negativamente afectada en su empleo por motivo de su edad, raza, color, religión, origen o condición social. Esto es, la Ley Núm. 100, *supra,* prohíbe y penaliza el discrimen en el empleo.[70]

Al igual que ocurrió con la Ley Núm. 80, *supra,* la Reforma Laboral establecida mediante la Ley Núm. 4-2017 conocida como *Ley de Transformación y Flexibilidad Laboral*, 29 LPRA sec. 121 et seq., eliminó la presunción controvertible de discrimen que contenía la Ley Núm. 100, *supra.* La enmienda equiparó la forma de probar discrimen al amparo de Ley Núm. 100, *supra,* con el esquema probatorio existente en la esfera federal. La presunción eliminada

---

[68] *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 987.
[69] 29 LPRA sec. 185a.
[70] *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 988.

transferiría al patrono el peso de la prueba para persuadir al tribunal. No obstante, al adoptar el esquema federal, es entonces necesario que el empleado demandante demuestre la existencia de un caso prima facie de discrimen. Al patrono únicamente se le transfiere el peso de presentar prueba. El empleado demandante siempre conserva el peso de persuadir al tribunal.[71]

El caso *prima facie* de discrimen se configura cuando el empleado establece que; (1) es miembro de un grupo protegido, (2) estaba cualificado para el trabajo, (3) fue despedido y (4) el patrono buscó reemplazarlo por otras personas con cualificaciones similares.[72]. El patrono entonces tiene que presentar evidencia admisible sobre la existencia de una razón legitima y no discriminatoria para la acción adversa. El patrono no tiene que convencer al juzgador de que la razón proferida es causa verdadera o que en estricto derecho es justa causa para el despido. Al patrono solo se le requiere presentar evidencia meramente suficientemente clara y específica para sostener que el motivo determinante no fue discriminatorio. Entonces, el demandante tiene la oportunidad de demostrar mediante preponderancia de la prueba que la razón ofrecida es un pretexto para ocultar el discrimen intencional.[73]

En resumen, el esquema probatorio vigente en Puerto Rico es que el empleado tiene la carga inicial de probar sus alegaciones en reclamos de despido injustificado y discrimen, y, tras demostrarse un caso *prima facie*, el patrono debe ofrecer una justificación legítima y no discriminatoria para la acción adversa.

Si queda demostrado que no hubo ánimo o intención discriminatoria en el despido, pero el patrono no probó la justa causa para el despido, el tribunal deberá concluir que el despido fue

---

[71] *Soto y otros v. Sky Caterers,* 2025 TSPR 3; 215 DPR ___ (2025).
[72] *Íd.*
[73] *Íd.*

injustificado y el empleado será acreedor exclusivamente a los remedios establecidos en la Ley Núm. 80. Sin embargo, cuando un patrono despide a un empleado mediando justa causa, no puede ser responsable de discrimen al amparo de la Ley Núm. 100, *supra*.[74]

## D.

También, nuestro ordenamiento jurídico provee una causa de acción a los empleados que sean despedidos, amenazados o víctimas de discrimen en su empleo por ofrecer testimonio en un foro legislativo, administrativo o judicial.[75] Esta causa de acción se encuentra amparada bajo la Ley Núm. 115 de 20 de diciembre de 1991, según enmendada, conocida como *Ley de Represalias contra el empleado por Ofrecer Testimonio* (Ley Núm. 115), 29 LPRA sec. 194 *et seq*.

En síntesis, la Ley Núm. 115, prohíbe a un patrono incurrir en actos de represalia en contra de su empleado por razón de que este participe en alguna actividad protegida por la referida ley.[76]

En lo pertinente, el Art. 2 de la Ley Núm. 115, dispone lo siguiente:

> (a) Ningún patrono podrá despedir, amenazar o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, así como el testimonio, expresión o información que ofrezca o intente ofrecer, en los procedimientos internos establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley.
>
> (b) Cualquier persona que alegue una violación a esta Ley podrá instar una acción civil en contra del patrono dentro de tres (3) años de la fecha en que ocurrió dicha violación y solicitar se le compense por los daños reales

---

[74] *Segarra Rivera v. Int'l. Shipping et al.*, supra, págs. 989-990.

[75] *Santiago Nieves v. Braulio Agosto Motors*, 197 DPR 369, 376 (2017); *Rentas Santiago v. Autogermana, Inc.*, 182 DPR 759, 765 (2011).

[76] *Santiago Nieves v. Braulio Agosto Motors*, supra, págs. 377-378; *Cordero Jiménez v. UPR*, 188 DPR 129, 135-136 (2013); *Rentas Santiago v. Autogermana, Inc,* supra, pág. 766.

sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios y honorarios de abogado. La responsabilidad del patrono con relación a los daños y a los salarios dejados de devengar será el doble de la cuantía que se determine causó la violación a las disposiciones de esta Ley.

(c) El empleado deberá probar la violación mediante evidencia directa o circunstancial. **El empleado podrá además establecer un caso prima facie de violación a la ley probando que participó en una actividad protegida por esta Ley y que fue subsiguientemente despedido, amenazado o discriminado en su contra de su empleo**. Una vez establecido lo anterior, el patrono deberá alegar y fundamentar una razón legítima y no discriminatoria para el despido. De alegar y fundamentar el patrono dicha razón, el empleado deberá demostrar que la razón alegada por el patrono era un mero pretexto para el despido. (Énfasis suplido).[77]

El Tribunal Supremo ha expresado que, cuando un patrono infringe el Art. 2 de la Ley Núm. 115, *supra,* tal estatuto le provee al empleado una causa de acción contra su patrono, en virtud de la cual podrá exigir compensación por daños sufridos, angustias mentales, restitución en el empleo, salarios dejados de devengar, beneficios y honorarios de abogados.[78]

Respecto al inciso (c) del Art. 2 de la Ley Núm. 115, nuestro máximo foro ha dispuesto que, con el fin de tener una causa de acción bajo esta disposición es necesario que el empleado pruebe que (1) participó en una actividad protegida por ley, y, (2) que subsiguientemente fue despedido, amenazado o sufrió discrimen en el empleo.[79]

Con relación al primer criterio esbozado, el Tribunal Supremo ha determinado que el alcance de la protección no solo se centra en expresiones realizadas en procesos investigativos, sino que se extiende a cualquier testimonio o información hecho por el empleado en cualquier foro bajo cualquier procedimiento.[80]

---

[77] 29 LPRA sec. 194b.
[78] *Rentas Santiago v. Autogermana, Inc.,* supra, págs. 766-767; *Cordero Jiménez v. UPR*, supra, pág. 137. *Santiago Nieves v. Braulio Agosto Motors*, supra, pág. 377.
[79] *Feliciano Martes v. Sheraton*, 182 DPR 368, 393-394 (2011).
[80] *Íd.,* págs. 394-395.

En cuanto al segundo criterio, el Tribunal Supremo expresó que es necesario que el empleado afectado provea suficiente evidencia indirecta con el fin de confirmar la existencia de un nexo causal entre su participación en la actividad protegida y la subsiguiente acción adversa comedita por el patrono.[81] Cuando un empleado pretenda establecer su caso *prima facie*, basta con que compruebe que la acción adversa experimentada ocurrió al poco tiempo de haber incurrido en la alegada actividad protegida.[82] Es decir, la proximidad temporal será suficiente para establecer su caso *prima facie*.[83] No obstante, en las situaciones donde no se configure el periodo catalogado como poco tiempo, se requerirá que el empleado demuestre la existencia de un nexo causal entre la acción protegida y la acción adversa.[84] Cónsono con lo anterior, el empleado deberá presentar evidencia estableciendo lo siguiente: (1) que fue tratado de forma distinta a otros empleados; (2) que existió un patrón de conducta antagonista en su contra; (3) que las razones articuladas por el patrono para fundamentar su acción adversa están plagadas de inconsistencias; o (4) cualquier otra evidencia que obre en el expediente para establecer el elemento del nexo causal.[85]

Si el empleado logra evidenciar los criterios anteriormente esbozados del inciso (c) del Art. 2, *supra*, queda entonces establecido su caso *prima facie* por represalias.[86]

Consiguientemente, conforme al Art. 2 de la Ley Núm. 115, *supra*, el peso de la prueba pasa al patrono, quien tendrá que demostrar que la acción tomada en contra del empleado estuvo debidamente fundamentada y libre de represiones.[87] Si el patrono logra demostrar que su acción fue justificada, el empleado deberá

---

[81] *Rentas Santiago v. Autogermana, Inc,* supra, pág. 767.
[82] *Íd.*
[83] *Feliciano Martes v. Sheraton*, supra, pág. 399.
[84] *Íd.,* pág. 400.
[85] *Íd.*
[86] *Santiago v. Autogermana, Inc,* supra, pág. 767.
[87] *Íd.*

demostrar que lo alegado por el patrono es un pretexto para la acción adversa.[88]

### III.

Atenderemos los señalamientos de error en el orden en que fueron discutidos en el escrito de apelación. De tal forma, consideraremos en conjunto el primer y tercer señalamiento de error, y luego el segundo señalamiento de error.

En el primer señalamiento de error, la señora Torres Ramírez asevera que el TPI erró al no permitirle presentar un escrito para refutar los planteamientos esbozados por FHP relacionados con los hechos adicionales incontrovertidos propuestos por la apelante. *No tiene razón.*

En el presente caso, FHP instó su solicitud de sentencia sumaria y la señora Torres Ramírez presentó la correspondiente oposición. Sin embargo, en dicha oposición, la apelante propuso una relación adicional de hechos incontrovertidos. La réplica que el TPI permitió a FHP se limitó a los hechos incontrovertidos adicionales que la señora Torres Ramírez incluyó en su oposición.

La Regla 36 de Procedimiento Civil, *supra*, establece que la parte contraria debe controvertir los hechos propuestos por la promovente de la moción. La señora Torres Ramírez se convirtió en la parte promovente de los hechos adicionales sobre los cuales alegó que no existía controversia. Por lo tanto, FHP pasó a ser la parte promovida de esos hechos adicionales y, por así disponerlo la Regla 36 de Procedimiento Civil, *supra,* tenía derecho, y el foro apelado le concedió la oportunidad, para oponerse a ellos. Por consiguiente, y contrario a lo planteado por la apelante, el TPI no le concedió a FHP más oportunidades que a ella para controvertir los hechos propuestos por la parte contraria. El TPI actuó de conformidad con

---

[88] *Íd.*

el trámite procesal de la Regla 36 de Procedimiento Civil, *supra,* al permitir que ambos litigantes tuvieran la oportunidad de controvertir los hechos propuestos por la parte contraria.

En su tercer señalamiento de error, la señora Torres Ramírez arguye que la resolución emitida por el TPI el 2 de octubre de 2023, mediante la cual se denegó una moción de desestimación parcial presentada por FHP, constituye la ley del caso y, por tanto, un impedimento para atender en los méritos la solicitud de sentencia sumaria adjudicada mediante la sentencia apelada. Para llegar a su conjetura, la señora Torres Ramírez parte de la premisa de que la moción de desestimación que dio lugar a la resolución de 2023 fue realmente una moción de sentencia sumaria porque se acompañó de la carta de reclamación extrajudicial y de un extracto de la deposición tomada a la apelante.

No obstante, se desprende de la referida resolución del 2 de octubre de 2023 que, al adjudicar la moción de desestimación de FHP, el TPI empleó el estándar exigido por la Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2(5), y su jurisprudencia interpretativa; y no el relativo a la Regla 36 de Procedimiento Civil, *supra.* Cónsono con ello, tomó como ciertas todas las alegaciones en la demanda que fueron correctamente alegadas de conformidad con el requisito de plausibilidad y las interpretó contextualmente de la forma más favorable a la señora Torres Ramírez. De igual forma, la sentencia emitida por otro panel de este Tribunal en el recurso KLCE202301212, evaluó la suficiencia de las alegaciones contenidas en la demanda a tenor con los parámetros de la Regla 10.2(5) de Procedimiento Civil, *supra,* y se modificó la resolución del 2 de octubre de 2023, a los fines de establecer que la defensa afirmativa de prescripción no fue renunciada por FHP.[89]

---

[89] *Supra,* nota 4.

Como se sabe, el estándar aplicable a la evaluación y adjudicación de una moción de desestimación por las alegaciones bajo la Regla 10.2(5) de Procedimiento Civil, *supra,* es muy distinto al estándar de evaluación y adjudicación de una moción de sentencia sumaria bajo la Regla 36 de ese mismo cuerpo reglamentario. El estándar bajo la Regla 10.2(5) de Procedimiento Civil es si de su faz las alegaciones, tal y cual plasmadas en la demanda, *exponen una reclamación* que justifique la concesión de un remedio. En la adjudicación de una moción de desestimación por las alegaciones bajo la Regla 10.2(5) de Procedimiento Civil no se entra en los méritos de la reclamación. En cambio, en una moción de sentencia sumaria bajo la Regla 36 de Procedimiento Civil, *supra,* la parte promovente de la moción dispositiva, luego de un proceso de descubrimiento de prueba, apoyada en prueba jurada y de otro tipo admisible, y en el derecho aplicable, establece que no hay necesidad de celebrarse un juicio por no existir controversias de hechos materiales y solo resta, por así proceder, dictar sentencia resolviendo el pleito de manera definitiva.

La *Resolución* que denegó la moción de desestimación parcial de FHP y la *Sentencia* del recurso KLCE202301212, que modificó esa resolución, no solventaron el pleito en sus méritos. Solamente se evaluó la suficiencia de las alegaciones de la demanda al palio de la Regla 10.2(5) de Procedimiento Civil, *supra.* Por tanto, FHP podía, como lo hizo, presentar una moción se sentencia sumaria apoyada en prueba admisible -sin limitarse a las alegaciones- que estableciera, ya concluido el descubrimiento de prueba de las partes, que la señora Torres Ramírez carecía de prueba suficiente para establecer sus causas de acción y que, por no existir controversias de hechos materiales, procedía dictar sentencia sumaria sobre la totalidad del pleito. El TPI evaluó la aludida

moción de sentencia sumaria a tenor con los criterios establecidos en la Regla 36 de Procedimiento Civil, *supra.*

En fin, contrario a lo aseverado por la señora Torres Ramírez, el asunto presentado en la solicitud de sentencia sumaria no ha sido previamente adjudicado, ya que se trata de dos mociones dispositivas distintas, presentadas en etapas procesales completamente diferentes, que acarean un análisis jurídico disímil. Como vimos, la resolución emitida por el TPI el 2 de octubre de 2023 atendió la solicitud de desestimación bajo la Regla 10.2(5) de Procedimiento Civil, *supra.* En la *Resolución* objeto del recurso que nos ocupa, el TPI tenía ante sí la adjudicación de una moción de sentencia sumaria. Por tanto, el foro apelado no estaba impedido, bajo la doctrina de la ley del caso, de analizar la moción de sentencia sumaria presentada por FHP, conforme a las exigencias de la precitada Regla 36 de Procedimiento Civil, *supra.* En definitiva, no se cometió el segundo señalamiento de error.

En su segundo señalamiento de error, la señora Torres Ramírez alega que el TPI erró al acoger la moción de sentencia sumaria de FHP y desestimar todas las causas de acción, a pesar de que, a su entender, controvirtió los hechos esbozados por FHP y logró establecer una controversia material sobre estos, lo que ameritaba la celebración de un juicio en su fondo.

En primer lugar y, a tenor con el marco jurídico previamente expuesto, nos encontramos en la misma posición que el TPI en revisar una moción de sentencia sumaria. Por eso, primero, nos compete evaluar si las partes cumplieron con los requisitos de forma exigidos por la Regla 36 de Procedimiento Civil, *supra*, respecto a la moción de sentencia sumaria, así como su oposición.

Al evaluar las formalidades de la norma procesal, opinamos que FHP cumplió cabalmente con la exposición de hechos esenciales e incontrovertidos, debidamente enumerados, así como con los

documentos que unió a su petición en apoyo a sus enunciados. En cuanto a la señora Torres Ramírez, ésta cumplió con su parte. En su oposición, planteó refutaciones a los hechos esenciales expuestos por FHP con el fin de establecer controversias de hechos y derrotar dicha solicitud. A esos fines, unió documentos en apoyo a su oposición a la moción de sentencia sumaria.

Examinados los escritos judiciales, concluimos que no existía impedimento alguno para que el TPI resolviera por la vía sumaria las contenciones de las partes. Por lo anterior, estamos en posición de considerar la aplicación del derecho.

En el presente caso, FHP acompañó su moción de sentencia sumaria de deposiciones, políticas de prevención de discrimen, de igualdad de oportunidades en el empleo, de presentación y trámite de querellas de la empresa, manual del empleado, correos electrónicos, cartas, certificados médicos de la apelante, entre otros, lo cual nos permitió corroborar los hechos que no están en controversia. Luego de revisar el expediente y los documentos que acompañan la moción de sentencia sumaria, colegimos que FHP logró demostrar que no existen controversias de hechos en el caso que nos ocupa.

En lo pertinente, la señora Torres Ramírez arguyó que se vio forzada a renunciar dada la carga excesiva de trabajo a la que FHP la sometió posterior al Huracán María, como resultado de reclamar mejores condiciones de trabajo desde diciembre de 2017; lo anterior, a pesar de conocer su condición de salud y limitaciones físicas desde el año 2015.

Según el expediente ante nuestra consideración, FHP cuenta con unas políticas y normas para atender los reclamos relacionados con las condiciones de empleo del recurso humano. Surge de los hechos incontrovertidos que los requerimientos realizados por la señora Torres Ramírez, luego del Huracán María, fueron atendidos

por FHP.  Desde el 2018 hasta el 2020, no constan circunstancias de las que se pueda concluir que FHP hubiese provocado algún tipo de malestar o incomodidad en el ámbito laboral a la señora Torres Ramírez.

Se desprende, además, que, en enero de 2020, el Programa Parcial de Ponce, en el que trabajaba la señora Torres Ramírez, cerró operaciones porque sufrió daños como consecuencia de los temblores ocurridos en dicho mes. A pesar de esas circunstancias, la señora Torres Ramírez no fue despedida. De hecho, a solicitud de ésta, FHP la relocalizó en la Unidad de San Juan Panamericano, desde febrero hasta el 20 de marzo de 2020.

Luego, en marzo de 2020, se decretó la emergencia por la pandemia del Covid-19. En abril de 2020, a solicitud de la señora Torres Ramírez, basada en su vulnerabilidad ante el Covid-19, FHP le concedió una licencia.  Más adelante, en mayo de 2020, FHP notificó a la señora Torres Ramírez que las circunstancias expuestas en la comunicación (crisis en las operaciones comerciales a raíz de la pandemia del Covid-19, disminución significativa de la demanda de servicios) justificaban una cesantía temporera, que duraría entre 4 a 12 semanas. Sin embargo, la misiva indicó a la señora Torres Ramírez sobre los beneficios que retendría, los derechos que le asistían como empelada y le ofreció alternativas.[90] Después, en agosto de 2020, FHP estuvo en condiciones de reinstalar a la señora Torres Ramírez, pero, tomando en consideración el último certificado médico presentado por ella, no pudo conceder el acomodo razonable solicitado de ubicarla en Ponce.  Empero, se le indicó que, en la eventualidad de que el censo del hospital aumentara y se mantuviera estable, esperaban poder ubicarla en sus funciones en

---

[90] Véase, expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC) en el caso PO2021CV00568, entrada 168, anejo 13.

Ponce.[91] Así las cosas, el 4 de septiembre de 2020, la señora Torres Ramírez presentó su carta de renuncia y dio por finalizado su empleo con FHP.

Luego de examinar el contexto de los sucesos anteriormente mencionados, colegimos que FHP no actuó de manera irrazonable, arbitrara o caprichosa. Más bien, las actuaciones de FHP fueron legítimas, dirigidas a salvaguardar el bienestar de la compañía. A su vez, surge de la prueba presentada que FHP buscó proteger el bienestar físico de la empleada, así como sus condiciones laborales. Por tanto, resulta forzoso concluir que FHP no tenía intención de perjudicar a la señora Torres Ramírez; recalcamos que la empresa preservó las condiciones laborales de la empleada a tenor con sus circunstancias de salud corroboradas mediante certificados médicos. La causa de acción por despido constructivo está disponible cuando la única alternativa que tiene el empleado es abandonar su empleo. En este caso, sin embargo, la señora Torres Ramírez no logró demostrar ante este Foro, ni ante el foro apelado, que la única opción viable para ella era renunciar a su empleo.

También, la señora Torres Ramírez adujo las actuaciones discriminatorias por parte de FHP consistieron en que ésta nombró supervisora y coordinadora de programas parciales a otra empleada, la Sra. Karen Pabón, quien no contaba con la experiencia y tiempo trabajando para el patrono, sin haberle ofrecido la plaza a la apelante. Además, afirmó haber sido víctima de humillaciones y comentarios discriminatorios por su edad por parte de otros compañeros.

Sin embargo, la prueba de FHP demostró que la señora Torres Ramírez nunca trabajó como coordinadora de programas parciales en FHP, por lo que no tenía esa experiencia ni conocía los procesos

---

[91] *Íd.,* entrada 168, anejo 12.

de coordinación de la empresa, contrario a la Sra. Karen Pabón, quien sí había ejecutado la posición de coordinadora en el mismo Programa Parcial en el que trabajaba la señora Torres Ramírez, por lo que tenía la experiencia en la posición y conocía los procesos, a diferencia de la apelante. Por tanto, la antigüedad de la señora Torres Ramírez no era suficiente para establecer que estuviera mejor cualificada que la Sra. Karen Pabón para ocupar el puesto de coordinadora. En cuanto a los presuntos comentarios y actos discriminatorios perpetrados por los compañeros de trabajo a la señora Torres Ramírez, la prueba demostró que éstos fueron notificados por primera vez en la carta de renuncia del 4 de septiembre de 2020. Anteriormente, no documentó ante FHP los supuestos comentarios de sus compañeros de trabajo. Por tanto, la señora Torres Ramírez no pudo establecer un caso *prima facie* de discrimen.

Por otro lado, la señora Torres Ramírez indicó que las actuaciones del patrono como acto de represalias en su contra se manifestaron en privarla de trabajar, aun existiendo opciones que se atemperaban a las recomendaciones de sus médicos. No obstante, la señora Torres Ramírez no logró demostrar que FHP tuviera motivos ilegítimos para no llamarla a regresar a trabajar. Por el contrario, la prueba de FHP demostró que reconoció a la señora Torres Ramírez el acomodo razonable solicitado por su condición de salud, así como los beneficios y derechos que le asistían como empleada, y que fue la apelante quien voluntariamente renunció a su empleo. Es decir, la señora Torres Ramírez no logró establecer los elementos de una causa de acción por represalias, a decir, que participó en alguna actividad protegida, y que fue subsiguientemente despedido, amenazado o discriminado en su contra de su empleo.

Según expuesto, la función esencial de la sentencia sumaria es permitir a una parte en un litigio civil probar, previo al juicio, que no existe una controversia material de hecho que deba ser dirimida en un juicio plenario. A su vez, el Tribunal Supremo también ha aclarado que una moción de sentencia sumaria por insuficiencia de la prueba procede cuando el promovente puede establecer que (1) el juicio en su fondo es innecesario; (2) el demandante no cuenta con evidencia suficiente para probar algún hecho esencial a su reclamación; y, (3) como cuestión de derecho, procede la desestimación de la reclamación.

Para disponer de un pleito por el fundamento de que una parte demandante no cuenta con evidencia suficiente para probar algún hecho esencial a su reclamación es indispensable que se le haya brindado a la parte promovida amplia oportunidad para realizar un descubrimiento de prueba, y que se demuestre que la prueba descubierta no satisface los elementos necesarios para establecer su causa de acción.[92] En el presente caso, mediante la prueba descubierta, la señora Torres Ramírez no logró refutar los hechos alegados, con prueba que controvirtiera la exposición de FHP a los efectos de que la empresa incurriera en un patrón de actuaciones que obligaran a la empleada a renunciar a su empleo. Mucho menos que dichas actuaciones constituyeran actos de discrimen o represalias. La parte promovida no puede evitar la disposición sumaria del pleito bajo el pretexto de que, a pesar de no contar con evidencia suficiente para probar los elementos indispensables para su reclamación, merece su día en corte.

Por otro lado, a la modalidad de sentencia sumaria por insuficiencia de la prueba le aplican todos los principios que deben utilizarse por los tribunales al resolver una solicitud de sentencia

---

[92] *Rodríguez Méndez v. Laser Eye*, supra, pág. 787.

sumaria.[93]  Por eso, cuando existe duda sobre si hay o no prueba suficiente o si hay una controversia de hecho, esta duda debe resolverse en favor de la parte promovida.[94]  En nuestro caso, incluso resolviendo toda duda a favor de la parte promovida, colegimos que la prueba disponible no resulta suficiente para establecer que FHP forzara la renuncia, despidiera a la señora Torres Ramírez o tomara una decisión adversa de empleo en su contra, sino que fue ella quien renunció voluntariamente a su empleo.

Contrario a lo argüido por la apelante, el TPI no descartó los hechos propuestos por ésta en la oposición a la moción de sentencia sumaria. Por el contrario, el TPI cumplió con la normativa vigente, aplicable a la disposición de mociones de sentencia sumaria, al basar sus determinaciones de hechos en la prueba presentada por las partes y en la documentación disponible en el expediente del caso.

En resumen, concluimos que la prueba aportada por FHP, no controvertida por la señora Torres Ramírez, es suficiente para establecer que ésta carece de evidencia que demuestre que mediara un despido injustificado en la modalidad de despido constructivo, discrimen por edad ni represalias por parte de FHP.  En consecuencia, el TPI actuó correctamente al acoger la solicitud de sentencia sumaria por insuficiencia de prueba y desestimar la demanda del presente caso. Los errores apuntados por la señora Torres Ramírez no se cometieron.

## IV.

Por los fundamentos que anteceden, confirmamos la sentencia apelada.

Notifíquese.

---

[93] *Medina v. M.S. & D. Química P.R., Inc.*, supra, pág. 734.
[94] *Íd.*

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones